UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
FAIR'S SEAFOOD, INC.,
    Debtor

Case No. 1-03-07261
Chapter 7

CGA LAW FIRM,
    Applicant

v.

LITTLE BAY BAIT & SEAFOOD CO.,
    Objectant



## OPINION

Before the Court are (1) the First and Final Application for Counsel Fees ("Final Application") filed by CGA Law Firm ("CGA") and (2) CGA's motion to withdraw as Debtor's counsel. CGA filed a chapter 11 bankruptcy petition for Fair's Seafood, Inc. ("Fair's") on December 10, 2003. After it became apparent that Fair's would not be able to reorganize, CGA filed its Final Application, its motion to withdraw as counsel and a motion to convert the case to chapter 7 on April 30, 2004. The motion to convert was granted immediately, but a response date was set on the Final Application. In the Final Application, CGA requested $1,283.83 in expenses and $17,410.00 in fees for 90.70 hours of legal services between December 8, 2003 and April 29, 2004.

CGA's motion to withdraw as counsel was prompted by a recent decision of the United States Supreme Court, *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023 (2004). In *Lamie*, the Supreme Court held that after the 1994 amendments to the

1

Bankruptcy Code, 11 U.S.C. § 330(a) no longer authorized the payment of the fees of a debtor's attorney from the bankruptcy estate without first being retained by the panel trustee administering the case. CGA has taken the position that it must withdraw as Fair's counsel since it may not be paid from the chapter 7 estate. On May 25, 2004, Little Bay Bait & Seafood Co. ("Little Bay") filed an objection to the motion to withdraw, arguing that inability to receive compensation is not a sufficient basis for counsel to withdraw prior to conclusion of a case. Little Bay also filed a limited objection to the fee application – not to contest the amount of the fees, but to argue that payment of such fees should be delayed until the payment in full of chapter 7 administrative expenses. In the alternative, Little Bay requested that any fees paid to CGA be treated as interim, fees, which could be disgorged in the event that there were insufficient funds to pay all chapter 7 expenses.

On July 21, 2004, the Court heard argument on these matters and requested briefs. Fairs has timely filed its briefs on all matters. Little Bay filed a brief only on the matter of CGA's withdrawal as counsel. These matters are ready for decision.[1]

### Discussion

*a.     The motion to withdraw as counsel*

In *Lamie,* an attorney sought compensation for services rendered to a chapter 7 debtor after the case was converted from chapter 11. Affirming the lower courts, the

---

[1]

I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. These matters are core pursuant to 28 U.S.C. §157(b)(2)(A),(K) and (O). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

2

Supreme Court held that an attorney in a chapter 7 case converted from chapter 11 could receive compensation for post-conversion services only if the panel trustee retained the attorney as special counsel. *Id.* at 1027.

In *Lamie*, the United States Trustee moved to convert the chapter 11 case of Equipment Services Inc. ("ESI") to chapter 7. The court granted the motion, and a trustee was appointed pursuant to 11 U.S.C. § 701(a). According to the recitation of the facts by the Supreme Court, "[t]his terminated ESI's status as debtor-in-possession and so terminated petitioner's service under § 327 as an attorney for the debtor-in-possession." *Id.* at 1029. This statement, while *dicta*, clearly conveys the Court's position that termination of an entity's status as a debtor-in-possession terminates the appointment of the attorney for the debtor-in-possession as well.

Several lower courts also have found that conversion of a chapter 11 case to chapter 7 terminates the services to the estate. For example, in *In re Hasset, Ltd.* 283 B.R. 376 (Bankr. E.D.N.Y. 2002), when a case converted from chapter 11 to chapter 7, debtor's attorney was held not to be entitled to be compensated from the bankruptcy estate for assistance he provided to the trustee post-conversion. Compensation was denied even though the attorney was instrumental in obtaining a purchaser for the debtor's assets that garnered $50,000 for the bankruptcy estate. The court held that even though the attorney's efforts enhanced the value of estate, they were in nature of, or duplicative of, duties of a trustee or of trustee's counsel. Thus, the attorney could not be compensated without prior authorization from the court. *Id.* at 382. Another bankruptcy court instructed that "[i]n a case converted from Chapter 11 to Chapter 7, once the necessary

3

transition matters are accomplished, debtor's counsel should immediately conclude its service to the former debtor-in-possession or seek further authorization from the bankruptcy court as to its appropriate role in the Chapter 7 case." *In re Brierwood Manor, Inc.*, 239 B.R. 709 (Bankr. D. N.J. 1999). This is exactly what CGA is required to do in the instant case.

It is noteworthy that the *Brierwood* Court did not state that the *duties* of the debtor's counsel are terminated at the point of conversion. Recognizing that certain practical matters must be accomplished in the transition from chapter 11 to chapter 7, the Court made the following observations:

> Fed.R.Bankr.P. 1019 subsections (4) and (5) deal specifically with the duties of the debtor following conversion from chapter 11 to chapter 7. Under subsection (4) the debtor in possession shall forthwith turn over to the chapter 7 trustee all records and property of the estate in its possession or control. Subsection (5) requires the debtor in possession to file a schedule of unpaid debts incurred during the chapter 11 administration and submit a final accounting to the United States Trustee. A corporate debtor may appear in court only by an attorney at law. Also, a corporation will have no funds to pay for legal counsel outside of property of the estate. The former debtor in possession may require assistance of counsel to perform these duties and such counsel should be compensated from the estate. Once the necessary transition matters are accomplished, debtor's counsel should immediately conclude its service to the former debtor in possession or seek further authorization from the bankruptcy court as to its appropriate role in the chapter 7 case.

*Id.* at 716 - 717.

Similarly, in the instant case, while CGA's compensible services were terminated as of the date of the conversion, its duties continued beyond that point. These duties would include those ordinary transitional functions that are necessary to advance the administration of the estate, including the filing of a schedule of unpaid debts and

4

attendance at the first meeting of creditors in the converted case.

Accordingly, because its services and appointment as counsel to the debtor-in-possession terminated with the conversion of the case, CGA's motion to withdraw as counsel is moot. It will therefore be denied.

b.      *The fee application*

Prior to the filing of the chapter 11 petition, CGA took a special retainer in the amount of $10,865.00, $865.00 of which was used to pay the bankruptcy filing fee. The total amount of compensation (both fees and expenses) requested in the instant application is $18,693.83. The fee application was served on all necessary parties, including the United States Trustee.

The topic of retainer agreements and the standards for the examination of fee applications in a case converted from chapter 11 to chapter 7 were thoroughly discussed in *In re Pannebaker Cabinets,* 198 B.R. 453 (Bankr. M.D. Pa. 1996). Therein, Judge Woodside discussed various retainer arrangements and their implications:

> The special retainer comes in two varieties: a security retainer and an advanced fee retainer. In the case of a security retainer:
>
>> the attorney holds the same to secure payment of fees for future services. The funds do not constitute a present payment but instead remain the property of the [d]ebtor until the attorney applies it to charges for services actually rendered, normally after the submission and approval of an application for compensation. (Citation omitted.)
>
> In the advance fee retainer arrangement,
>
>> the attorney receives payment in advance for contemplated legal services and depletes the prepaid fund as services are rendered. Advance fee retainers differ from security retainers in that ownership of the funds is intended to pass to the attorney at the time of the payment. (Citation omitted.)

5

> In determining what category a specific retainer falls within, courts generally review the description contained in the professional's application for employment, the terms of any retainer agreement, and testimony of the debtors and professionals. (Citation omitted.) The general rule is that, unless shown to be otherwise, a retainer constitutes funds held in trust for the benefit of the debtor, i.e., a security retainer. *See In re Office Products of America, Inc.,* 136 B.R. 964, 970 (Bankr.W.D.Tex.1992); *see also In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr.D.Md.1993) (citing cases). To the extent a professional seeks a determination that a retainer is a classic, flat fee retainer or an advance payment retainer, the burden rests with the professional to so establish. *In re Mondie Forge Co.,* 154 B.R. 232, 238 (Bankr.N.D.Ohio 1993).

*Pannebaker,* 198 B.R. at 459 - 460.

CGA has provided no evidence to the effect that its retainer was a classic, flat fee, or advanced payment retainer. Neither the fee application nor the application to appoint CGA as counsel to the debtor-in-possession contains a copy or excerpt from the actual retainer agreement. CGA provided no testimony regarding the agreement. Thus, CGA's retainer must be deemed to have been a security retainer. *See Id.* at 460. Accordingly, those funds paid as a retainer remained Fair's property while the case was in chapter 11. No order was issued authorizing CGA to draw from these funds while the case was in chapter 11.

"A prepetition security retainer is a traditional, valid and proper means ... to secure ... future payment [and is] delivered essentially to serve as collateral ... thus transforming the attorney into a secured creditor with a possessory perfected security interest" in fees ultimately approved by the court. *Id.* at 460 (citations omitted). Thus, in *Pannebaker*, the Court treated the attorney for a chapter 11 debtor as a secured creditor whose rights to the property of a debtor over which the attorney had a security interest

6

were superior to the rights of administrative claims holders. The Court noted that no objection had been made to the amount requested in the attorney's fee application on grounds that such amount was excessive. Therefore, the Court overruled the objection of an administrative claim holder to the payment of the attorney's fees from the retainer after the case converted to chapter 7. The facts in the instant case are identical. Little Bay was the sole objectant to the fee application, and its objection was limited to the issue of whether CGA's interest in the retainer fund primed the interest of the chapter 7 estate and its creditors. Like the attorney in *Pannebaker*, CGA's interests do prime all others. Little Bay does not aver that CGA's fees are excessive or that they cover services that were unnecessary. Accordingly, I conclude that Little Bay's objection to the payment of the retainer to CGA should be overruled.

An appropriate order will follow.

BY THE COURT

MARY D. FRANCE
BANKRUPTCY JUDGE

HARRISBURG, PENNSYLVANIA

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | * | |
| **FAIR'S SEAFOOD, INC.,** | * | **Case No. 1-03-07261** |
| **Debtor** | * | **Chapter 7** |
| | * | |

## ORDER

AND NOW, this 12th day of October, 2004, the motion to withdraw as counsel filed by CGA Law Firm is hereby denied. The First and Final Fee Application of CGA law firm is hereby approved.

BY THE COURT

Mary D. France

MARY D. FRANCE
BANKRUPTCY JUDGE

HARRISBURG, PENNSYLVANIA

FILED Harrisburg, PA TIME ___ A.M. ___ P.M.
OCT 1 2 2004
Clerk, U.S. Bankruptcy Court
Per ___ Deputy Clerk

AO 72A
(Rev. 8/82)